Good morning, your honors. May it please the court. David Force on behalf of the appellant, and I would like to reserve five minutes. It seems to me that there are just two issues in this case, and they're fairly straightforward. One is, was Mr. Picray arrested? And the other one is, was he arrested and exiled from the campus of Oregon State University because of speech or because what he was doing in speaking was conduct? Can you focus on the second one? Because I don't think there's any doubt that he was exiled, whether or not he was arrested. And tell me what issue of fact there was for the jury to try on that question. The court, the district court granted summary judgment. Tell us what disputed issue of fact there was. I think that what I've identified, your honor, whether he was, whether what he was exiled for was conduct or speech. They just, at a given point after this litigation was filed and not before, the, Mr. Rogers and his attorneys decided to call what Mr. Picray was doing conduct, and that made it lawful for them under their definition of what Mr. Rogers' duties are. Let's take that as a given for purposes of our discussion. What I don't see, and I'd like your help on, is evidence that you put in the record that shows, number one, that the officers who investigated your client even knew what had been said when they first got there. I saw nothing about that. Later on, they talked to these other employees. They said all the things that he'd done. That seems to be what Mr. Rogers was acting on. Your client didn't respond. But for purposes of the speech issues, what speech are you saying that your client engaged in that was effectively stopped, as well as that of others in a similarly situated situation? Well, I'm not going to say it was stopped. It was already completed by the time the actions that we're suing for occurred. But he was telling people who used to work for him that he had been terminated that day because he had refused to phony up a time card, basically. But that's not, as I understand the record, that is not what they talked about. They didn't talk about his speech. They received a complaint that there was a disturbance with people stopping them from doing their jobs and the like. They came out and tried to investigate your client. He engaged in some interesting conduct himself, and he was not detained after he went through his 45-minute spiel. He went away. They gave him his exclusion order. Mr. Rogers focused on what the allegation was. Your client didn't even bother to respond. But nowhere here do I find anything from you, the one who has the burden of proof, that shows what specific speech your client made that was stopped by these officers and what specific speech was prohibited in the future. What speech was chilled? What speech was chilled was him saying anything in the world on the campus of Oregon State University for the rest of his life. And I take that as a fact. Here's my problem, and I think Judge Spitz and I are asking the same question, maybe a little bit differently. You have to show that Mr. Rogers, but for the speech, would not have terminated, would not have excluded from the campus. And what I'm having some difficulty is figuring out whether you've met your burden of demonstrating that Mr. Rogers acted for that reason and what was in front of Mr. Rogers at the time that he made the decision. In other words, we know now that your client engaged in speech before the officers came. We know now the officers gave him an exclusion ticket. We know now that Mr. Rogers upheld the ticket after your client refused to provide any further information. My question was, on the basis of the information in front of Mr. Rogers, how can we conclude that there's a triable issue of fact that he acted in order to chill your client's speech? Well, because he had those reports from the police officers. Tell us what he had. He had the police officers' reports that said that they talked to three people, none of whom said that my client had threatened him in any way. That's not what it says, counsel. Well, one of them felt uncomfortable. More than that. Every single one of them expressed discomfort and felt a little threatened, at least the three that I read. Maybe I read the wrong ones. There are only three. Okay. Well, the ones I saw, every single one of them indicated some discomfort and were really didn't know quite what to do, and that's what seemed to have been reported to Mr. Rogers. Mr. Rogers contacted your client apparently repeatedly. Your client didn't bother to respond. He perhaps could have put the kibosh on the whole thing, but it seemed like Rogers had a one-side. Your client didn't respond, so, in effect, he entered a default judgment. The one side did not identify any conduct that would have justified the removal of Mr. Pickray from the campus. Well, that's your position, but the reality is if we had the court employees here and a former CSO came in and started to berate them and tell them that he was threatening them or whatever, it doesn't have to be speech. It's conduct. It's against the law, and in this case, I'm struggling to find why what you're talking about was not conduct, and there's no specific speech that was prohibited. You're saying you can't threaten these people. You can't intimidate these people, and because of our policy, we don't allow that, so you're barred, but you have a right to appeal to Mr. Rogers, so Mr. Rogers said, hey, tell me what your story is. He won't respond. Your Honor, what Mr. Rogers said was not that you can't talk to these, you can't say things to these people, but that you interrupted their work, and they weren't at work. That's the only rationale for Mr. Rogers' order. Well, let's assume that Mr. Rogers didn't have, and there's two separate issues here, and it seems to me you need to be addressing the speech-related one. It may be that Mr. Rogers didn't have enough evidence of disruption under campus law to rule the way he did, although you didn't seem to contest that. The question for me is whether or not you've produced any evidence that he acted that way in order to chill speech by your client. In other words, the police may have given him a bad report. They may have overemphasized what happened. They may have not have told the story correctly. My difficulty with this is that it seems to me the only story that was in front of him was the police story, and he said, okay, nobody's opposed it. I guess this guy must have been disruptive, and I'm going to exclude him. Where's the evidence from which we can find a triable First Amendment issue? Well, the problem is what Mr. Rogers said was the speech he was referring to, or what he called conduct, was my client's failure to cooperate with the police, namely by exercising his right of silence. Well, let me try this again. And that's all I think Mr. Rogers, that's my problem with this record, is Mr. Rogers may have only known about that. The police came. They heard there was a disturbance. Your client gave him a rough time. Maybe he was entitled to. They report back to Mr. Rogers, and they say, Pickering gave us a rough time. We think you ought to keep him off the campus, and Mr. Rogers keeps him off the campus. I'm trying to figure out how Mr. Rogers acted in retaliation or in order to suppress speech under that set of facts. What was in front of him that might have given, if I were the judge, if I were Mr. Rogers, what is there that I might have looked at and said, oh, my gosh, I better not do this because I'll be chilling speech? My position is pretty simple, Your Honor, and that is that if he looked at those police reports, he would see that the only thing that was alleged was that Mr. Pickering had made statements that some people were uncomfortable with. That's all that was alleged. It was not alleged that he did anything else. And that's enough, in your view, to create a triable issue on that? It is. Okay. I struggle with the same thing that Judge Hurwitz does because it's your burden of proof to show, and I'm checking what this case law says, that the exclusion would chill him or others from engaging in future speech, or two, that a desire to cause such a chilling effect was the but-for cause of Rogers' action. I don't find any evidence to that effect in your pleadings. I don't assert the or two part, but it certainly did chill his speech because he's not allowed to speak anymore on the premises. What evidence do you have in the record that the chilling effects here was the but-for cause of Mr. Rogers' decision? Any evidence? The fact that the only thing that Mr. Rogers had in front of him was a report of speech. So if I could rephrase your argument, what you're saying is that the reports of the officers, because that's all that Mr. Rogers had, properly read, demonstrated that the only thing he'd done was speak, and therefore the exclusion must have been based on speech. That's right. Okay. And in fact, I think that's what he's saying. I'm getting into my rebuttal time here, but I think that's what he's saying when he's saying that that conduct interfered with the work, because that conduct was only speech. And so if that was what interfered with the work, it was protected by the First Amendment, even though it didn't interfere with anybody's work. Okay. All right. So we'll save the balance for your time for rebuttal. We'll hear from the opposing side. Please support Lee Selman appearing on behalf of Defendants Richard Vu and Chris Graves. My co-counsel, Amanda Walkoff, is here appearing on behalf of Defendant Rogers, and we'd like to share our time. I'm going to take approximately eight minutes. I'd like to reserve seven for co-counsel. At the outset, I would just like to clarify that plaintiff did raise a First Amendment claim against Defendants Vu and Graves. The district court ruled against plaintiff, and plaintiff elected not to appeal that decision. So as far as Defendants Vu and Graves are concerned, the only question in this case is whether the seizure was justified at the inception and whether it was reasonably related in scope to the circumstances which justified the seizure in the first place. So with respect to the first prong, it's undisputed. Plaintiff has never disputed. Let me just get a clarification. So you're saying that it's really just against Mr. Rogers, the First Amendment claim is just against Rogers, or was there another officer that still has a pending First Amendment claim? The First Amendment claim is only against Defendant Rogers. Okay. All right. Thank you. So going back, with respect to the first question, plaintiff has never disputed that the officers possessed reasonable suspicion of criminal activity, and so our seizure was justified at its inception. The only issue is whether the officers pursued their investigation. Whether they detained them too long. In a nutshell, yes, Your Honor, whether they took too long. And as your questioning suggests with respect to the First Amendment issue, Defendants put on evidence in the record that they were confronted with a belligerent individual. They were responding to a potentially volatile situation, and that they received a report that an employee who had just been terminated was confronting his former co-workers. As I read the record in this, part of the confrontation was caused by somebody, a former supervisor, in effect, showing up at the scene and blocking Mr. Pickery's egress. Is that a fair statement? That is correct, Your Honor. And I think that also factors into the reasonableness of the officers' actions, because when they show up, they are immediately confronted with a scene where you have the former supervisor is blocking the plaintiff in with his car. The plaintiff is yelling at the supervisor, telling him to get out of the way, accusing him of kidnapping. So we have a situation where people's emotions are already elevated when the officers show up. They calm the situation. They do briefly detain the plaintiff. While he is detained, however, it's undisputed that Officer Graves was interviewing all of the other people present. The evidence in the record indicates that as soon as he completed his interviews, he reported back to the sergeant who was on scene. They determined that no crime had occurred, but that an exclusion was warranted because of the conduct. I'm fascinated by this lifetime ban from campus. What do you have to do to get a lifetime ban? And is there some way of the ban being shorter? I think that would be... I understand that your co-counsel may want to address that, but it strikes me we wouldn't be here today if somebody said stay off the campus for 30 days or 60 days. But this lifetime ban from the campus, what justifies that in your view? And I believe that's a question that I'll have to leave for my co-counsel. Well, but at least your clients recommended it. They did, and I apologize, Your Honor. I don't know the ins and outs of the university system and what would justify it. Is it just a box you check on the citation, or do they have to go out of their way to recommend it? I apologize. You don't have to apologize. I can't figure it out either. That's why I'm asking you. I'll have to leave that for my co-counsel who represents the university system. Do you know, just following up on Judge Hurwitz's question, do you know whether your clients initiated the lifetime ban sua sponte, or were they directed to do so by someone not on the scene? That I do not know. I believe one of the troopers recommended that an exclusion order was justified. I don't know whether the officer recommended a lifetime ban. A separate university officer did show up, and he is the one who actually completed the form and issued the citation. As I understand it from reading the record, it seems like that when they gave Mr. Pickery this citation, they specifically referred to maybe Mr. Rogers, I'm not sure whether it was by name, and indicate that he would have an opportunity to dispute this with Mr. Rogers and explain things and thereby exculpate himself. I didn't find anything in the record, but maybe you know or maybe your other counsel can tell me, is there anything in the record that suggests that this was an unusual situation where you've got something of this nature, that this happened a lot? Or was this extremely rare? Anything in the record about that? I don't believe there's anything in the record that indicates whether this was a common practice. The reference to Defendant Rogers was, I believe, to inform Plaintiff that there is an administrative appeal procedure available to him that he could vindicate himself. Just touching back onto the core question for Defendants Boo and Graves, the question is whether or not they diligently pursued the investigation. And as I indicated, Defendants produced evidence that they diligently pursued the investigation by interviewing all the persons present and testified that it took approximately 45 minutes. Plaintiff, whose burden it was to demonstrate that there was a dispute material fact, did not put forth any evidence contesting any of the facts that Defendants Boo and Graves submitted. Based on that, I believe all of the evidence in the record demonstrates that the seizure, which was justified by reasonable suspicion, was reasonable in its scope. So unless this Court has any further questions, I'll turn it over to my counsel. I don't think we do. Thank you.  May it please the Court, good morning. My name is Amanda Walketh, and I represent FLE Jack Rogers. First, it sounds like there's some interest in the ban itself, and what I'd like to do is address some of the comments from the Court. The ban, as far as the length in Mr. Rogers' letter when he writes to Plaintiff Pickray, he's specifically responding to what it was that brought the exclusion notice to him. The record is clear that at the time that Mr. Rogers was considering the appeal, he had only limited access to information, and that is the police reports, the policy itself, the exclusion notice, and then Plaintiff's appeal. Well, at least when he made this decision, he had before him a police report that indicated that Mr. Pickray had engaged in some sort of speech when he came to campus. He was talking to former employees and telling them something about his termination and what they ought to be worried about. Mr. Rogers knows that he was engaging in some form of protected speech, although maybe he went over the line with his conduct. We don't know. Can you then exclude him from engaging in that kind of speech on campus forever? Well, the actual exclusion is not forever. It was until further notice. Has further notice occurred? No, it has not. So that's forever, isn't it? Okay. If you go to the policy itself, it does talk about the duration of exclusions. And in this case, in the letter that Mr. Rogers wrote to Plaintiff, he does indicate, please contact me. So we don't know what would have happened if Plaintiff would have taken the initiative, but as to the policy itself, it does anticipate that an exclusion does not have to be for any longer. So can Mr. Pickray now apply to rejoin the campus community? There's nothing in the record that indicates that, but yes. What is the record site for the actual policy of the university to which Mr. Rogers made reference? The policy is set forth in SDR 12 through 15, and it's the university's trespass policy. And that policy states that the university will issue an exclusion notice if behavior is either criminal or becomes disruptive. And it talks specifically about the need to provide protection, safety, and security for the welfare of students, faculty, and staff. And it's undisputed that these folks were on their way to work. They were on campus. They were walking to work at the time they interacted with Plaintiff. Clearly, it's an egress issue. I have a question for you. As I understand it, the people, both Mr. Pickray and the three people that he spoke to, actually work for a contractor who works for the university. Does the policy to which you make reference in SDR 12 through 15 limit the exclusion to university employees, or does it have reference to anybody that is employed by the university, whether in a contract situation or not? Well, the policy just references staff, but it does go on to say and guests at the university. So from your perspective, the fact that these folks were contract employees doesn't make any difference. That's correct. Their work was interfered with. Does the policy talk at all about what in the courts we would in effect refer to as a default judgment? I'm frankly puzzled given Mr. Pickray's strong reaction at the scene that he did not bother to respond to Mr. Pickray. I mean Mr. Rogers. Does the policy say if you don't respond, we just act based on what we have? Is there anything about that? Well, what it does say is that the recipient of an exclusion notice has the opportunity to appeal and that the director shall make a decision within five days. So if you look at it in the totality, there's an opportunity for a lot more to be included. But in this case, because Plaintiff did not respond, Rogers had to make a decision based on what he had available. And you've indicated, I think, to the court that if Mr. Pickray were to apply even now, his matter would be considered. That's correct. And actually when I read through the policy now, it does talk about the director has the right to retain or retains the right to revoke an exclusion order. And what page of the record are you looking at? I'm looking at SDR page 15. So the last page of the policy. And this is the page that starts out the appeal. But he can purge his own problem possibly by doing that now. That is correct. So if the plaintiff had responded to Mr. Rogers' request, let's talk about this, Mr. Rogers could have vacated the exclusion. That is correct. The rule gives Mr. Rogers express authority to do so. Oh, I see. It's the other SCR. Thank you. There's a recording at one of the SCR 15s, but now I see it. Thank you. It isn't often that you find someone recording their own conduct like this. It's interesting. So let me ask the question that I tried to ask your opponent. There's something at least in this record that suggests that some speech was going on. Is that enough to get to the attributable issue of fact about whether or not the speech was a but-for cause of the exclusion? No. The law is clear that there has to be evidence showing that the speech was a substantially motivating factor in the decision. It's not sufficient. Knowledge is not enough. There has to be something more, and there has to be basically you have the speech and you have the action. So how would somebody in Mr. Pickering's position show that? I mean, it's unlikely that an official like Mr. Rogers would say, well, I'm doing this because he was speaking, or that the officers would say, I'm doing this because he was speaking. But there is some evidence that what caused the disruption was his speech. And so why isn't that enough to at least get them to the jury on this issue? There are a lot of different ways. I mean, the substantially motivating factor can be proven both with direct and circumstantial evidence. And there's a lot of different types of circumstantial evidence, but it's not involved in this record. If you look at the letter that Rogers wrote to plaintiffs expressly outlining his decision, he's saying, you know, this all came about because there was an interference with the workplace. He's looked at the police report. It was specifically limited to his interaction with the coworkers and plaintiff. And based on this information, I'm finding that there's sufficient evidence. There's nothing in there to indicate motivating factor as the content of the speech. There's plenty in the record, as the Court has already indicated, showing that before Rogers there was a lot of conduct that would definitely support, independent of the speech, it would support the issuance of the exclusion. So Judge Aiken was correct when she indicated that basically this is just a failure of proof. If these folks had put on evidence that talked about speech or if Mr. Pickrey had responded to Mr. Rogers, spoke of the speech he made, that might be a different situation. But here you just simply have a vacuum in connection with what a speech was allegedly involved and therefore no basis for saying it was the but-for decision prong of Mr. Rogers' ultimate action. That is correct. We obviously agree with Judge Aiken's ruling. And then you also have the second prong, which is even if you found that speech did create some sort of motivating factor, which there is no evidence, there would still be qualified immunity for which Mr. Rogers is entitled. I'm out of time. Thank you. All right. Thank you very much. Counsel, do you have a little time left? With regard to this notion about how the fighter could have avoided this order, he did appeal timely within the rule. He appealed to Mr. Rogers within the five days. And this letter telling him that based on the police reports he had caused disruption from Mr. Rogers was the denial of his appeal. Well, what about the response that counsel just made, which is even if a First Amendment claim was involved here that this is such an unusual situation, there's clearly no case law that really is on the money here or even close to it, and therefore there's qualified immunity. Well, as I pointed out in several cases in the briefing, Your Honor, you don't have to have an exact match. Common sense works sometimes. I would suggest that if Mr. Rogers doesn't know that he can't exclude people from public property for life because of the content of their speech, he ought to. How do you address the Al-Kid decision on that point, the Supreme Court's Al-Kid? Doesn't that completely negate what you just said as far as qualified immunity is concerned? Well, it's obviously an entirely different factual situation. Well, sure, but they talked about how close a case needs to be in order to take someone out of the qualified immunity category. Well, all I can say, Your Honor, if you're going to adapt, if you're going to apply Al-Kid to this situation, I have to admit there's no way I can't concede that I have never found another case where it was a lifetime exclusion from a campus. What concerns me in this case is sort of a mixture of facts. It's one where your client, even taking it in the light most favorable to him, is pretty disruptive once the police show up. They say there's alcohol in his breath. He never rebuts that. Oh, yes, he does. Well, he rebuts it to them in his statements, but there's certainly nothing brought to Mr. Rogers. They say there's alcohol in his breath. He's being belligerent. So let's assume there's a mixture. Let's assume he was speaking and then he got really belligerent afterwards. Is that enough to meet your – and assume all those facts are true? Assume everything in the police reports are true? I do assume everything in the police reports are true. Isn't that enough to justify Mr. Rogers' action? You say, look, I don't want people on campus who, even if they arrive with good intentions, once confronted by police officers, create a ruckus. Well, did he create the ruckus, Your Honor? Well, I've actually looked at the tape. It looks like he did. Well, he kept asserting his constitutional rights, and I guess you could say that created a ruckus, but I think we're all entitled to do that. You know, this issue that counsel brought up about reasonable suspicion, we didn't contest, and that's true. But there is no reasonable suspicion basis for a warrantless arrest. That's your Fourth Amendment claim. And a volatile situation that the police arrived for, they didn't even question Mr. Heave, the supervisor who blocked him in. He's the one that created the volatile situation. None of those employees said that Mr. Pickray had created a volatile situation. The volatile situation was created for him, and he responded in a way that – you know, he failed the attitude test. Is that enough to arrest somebody and finally – But you're assuming there was an arrest as opposed to a detention while they were figuring out what was going on. I certainly am. Okay. Judge Allerkon has a question. In the motion for summary judgment, the defendant, Rogers, presented a statement that the only basis for the exclusion was the disturbance caused by the plaintiff. What evidence was offered in response to that showing a genuine issue of fact and dispute that there was some other reason for Mr. Rogers' conduct? Well – And let me read you one line, and you tell me if there's more to it. Okay. As I read it, it says, I have been excluded by Defendant Rogers simply for the content of my speech on April 30, 2009. What else did you offer to show that that was Mr. Rogers' intent and motive? His letter. And what in the letter shows that his motive was that? He says that you were uncooperative with the police and that you interfered with the work environment of the contract employees. The only thing he did with the contract employees was speak. The only thing he did with the police was speak and assert his constitutional rights. That's it. He never touched anybody. And I should point out that the allegation of probable cause that the officers made was that he was drunk, which was completely untrue, and they didn't even follow up and investigate that. But – and finally, I want to – Any other questions? I want to point out that ER Volume 1, pages 26 and 27, is what the officers said about the exclusion. Counsel, you're over your time. We thank you very much. Thank all counsel for their presentation. The case of Pickrey v. Rogers et al. is submitted.
judges: Alarcon, Smith, Hurwitz